IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 13 |
| FRANK L. ADAMS, JR. and | * | |
| SHIRLEY T. ADAMS, | * | |
|     Debtors | * | |
| | * | |
| FRANK L. ADAMS, JR. and | * | CASE NO. 1-06-bk-02006MDF |
| SHIRLEY T. ADAMS | * | |
|     Plaintiffs | * | ADV. NO. 1-07-ap--00122MDF |
| | * | |
| v. | * | |
| | * | |
| RBS CITIZENS, NATIONAL ASSN, | * | |
| s/v/m/t CCO MORTGAGE CORP. | * | |
|     Defendant | * | |

**OPINION**

Before the Court is the motion of RBS Citizens National Association ("RBS") to dismiss the Adversary Complaint ("Complaint") filed by Frank L. and Shirley T. Adams ("Debtors") seeking damages for violation of certain provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. The Complaint also seeks damages for violation of the Real Estate Settlement Procedures Act of 1974 (RESPA), Pub. L. 93-533, Dec. 22, 1974, 88 Stat. 1724, 12 U.S.C. § 2601 et seq.[1] For the reasons set forth below, the Motion is granted in part and denied in part.

**Factual and Procedural History**

Debtors filed a petition under chapter 13 on September 15, 2006. Their first amended plan was confirmed on June 7, 2007. RBS holds a first mortgage against Debtors' residence. On

---

[1]The first paragraph of the Complaint states that it is an action for actual and punitive damages pursuant to the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA") and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). However, neither statute is cited under the five counts of the Complaint. The Court will consider the references to the FCEUA and the UTPCPL as a drafting error.

schedule "A" of their petition, Debtors estimated that RBS's secured claim was approximately $67,470.00. The confirmed plan provided that pre-petition arrears would be cured through the payment of RBS's allowed claim, proof of which had not been filed as of the date of confirmation. On November 20, 2006, RBS filed a proof of claim asserting a secured claim in the amount of $72,378.81, which included arrearages in the amount of $5,882.05, an appraisal fee of $507.00, foreclosure costs of $500.00 and a Broker Price Opinion ("BPO") fee of $95.00.

On July 26, 2007, Debtors filed an objection to RBS's proof of claim joined with a "motion to strike the claim and bar any refilling(sic), a claim to avoid the lien, if any, and a cause of action for sanctions for claiming unlawful and unapproved fees."[2] Debtors assert that the arrearages listed on the proof of claim are excessive and that the claim improperly includes amounts that became due post-petition. They further allege that the appraisal fee as well as the BPO fee were "unreasonable and unnecessary." Debtors also argue that RBS's proof of claim was deficient because it "did not itemize its computation of arrearages . . . , 'other fees due' of $627.50 or the 'total fees' of $78.50."

In addition to alleged violations of the Bankruptcy Code, Debtors also assert that upon receipt of the proof of claim, Debtors transmitted to RBS a Qualified Written Request ("QWR") under RESPA demanding information to substantiate certain fees and charges. Debtors complain that RBS "has not acknowledged nor responded to the QWR as required by law." This failure to respond, according to Debtors, entitles them to statutory damages under RESPA.

RBS filed a response to the Complaint along with a motion to dismiss generally denying

---

[2]An objection to a claim is filed as a contested matter under Fed. R. Bankr. P. 9016 unless it is joined with a demand for relief of the kind specified in Rule 7001, whereupon it becomes an adversary proceeding. *See* Fed. R. Bankr. P. 3007(a).

Debtors' substantive allegations. The motion to dismiss alleged that the Complaint misrepresented the facts, that it was frivolous and that it had been filed simply to generate attorneys' fees for Debtors' counsel.

The motion to dismiss is ready for decision.[3]

## Discussion

In deciding a motion to dismiss, I must treat the facts alleged in a complaint as true, construe the allegations in the light most favorable to the non-moving party, draw all reasonable inferences that can be drawn therefrom in favor of the non-moving party, and ask whether, under any reasonable reading of the complaint, the non-moving party is entitled to relief. *Kehr Packages, Inc.v. Fidelcor, Inc.,* 926 F.2d 1406, 1410 (3d Cir.), cert. denied, 111 S. Ct. 2839 (1991). I need not decide whether or not the non-moving party ultimately will prevail; rather I need only determine whether the plaintiff would be entitled to relief under any set of facts that could be proven consistent with the allegations set forth in the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

    a.    *First Count – Violation of Automatic Stay*

Debtors aver that "to the extent [RBS] has attempted to collect post-petition interest in its proof of claim, or assessed any other fees and costs post-petition, the actions of Defendant in imposing improper, unauthorized and unapproved fees and charges to [Debtors'] mortgage loan constitute a gross violation of the automatic stay as set forth in 11 U.S.C. § 362(a)(3)." Although the fees may be improper, their inclusion in the proof of claim is not a violation of the automatic

---

[3]I have core jurisdiction to hear this matter pursuant to 28 U.S.C. §157(b)(2)(A), (B), (C) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Fed. R. Bankr. P. 7052.

3

stay. *See In re Hurst*, 357 B.R. 782, 785 (Bankr. W.D. Ark. 2006); *In re Sammon*, 253 B.R. 672, 681 (Bankr. D. S.C. 2000). Thus, in *In re Surprise*, 342 B.R. 119 (Bankr. N.D. N.Y. 2006), the court denied a debtor's motion seeking damages when the creditor filed a proof of claim that the debtor alleged was inaccurate because it listed the claim as secured. The court held that, "as a matter of law" the filing of the proof of claim was not taken "outside the jurisdiction of this Court" in violation of the automatic stay. *Id.* at 122. Accordingly, the motion to dismiss will be granted as to the first count of the Complaint.

      *b.     Second Count – Motion to Strike RBS's Claim*

Debtors assert that the RBS claim should be stricken with prejudice, alleging that the claim "violates Fed. R. Bankr. P. 3001 because it fails to sufficiently document and explain the basis for the arrearage calculation." Rule 3001 contains no explicit requirement that a claimant "document and explain" the basis for any arrearages included in the claim. However, it does state that "a proof of claim shall conform substantially to the appropriate Official Form." In turn the proof of claim form (Official Form 10) includes a directive to "check this box if claim includes interest or other charges in addition to the principal amount of [the] claim. Attach itemized statement of interest or charges." Thus, Debtors argue that the RBS claim should be stricken not because it fails to comply with the Rules, but because of its lack of conformity to Official Form 10.

"A majority of courts hold that a failure to attach documents purportedly required by Fed. R. Bankr. P. 3001 and Official Form 10 is not, by itself, a basis for disallowance of a claim." *In re Burkett,* 329 B.R. 820, 828 (Bankr. S.D. Ohio 2005) (citing *Wright v. Holm (In re Holm)*, 931 F.2d 620 (9th Cir.1991); *Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation)*, 318 B.R.

147 (8th Cir. BAP 2004); *In re Relford*, 323 B.R. 669 (Bankr. S.D. Ind. 2005); *Isom v. eCast Settlement Corp. (In re Isom)*, 321 B.R. 756 (Bankr. N.D. Ga. 2005); *In re Guidry*, 321 B.R. 712 (Bankr. N.D. Ill. 2005); *In re Shaffner*, 320 B.R. 870 (Bankr. W.D. Mich. 2005); *In re Armstrong*, 320 B.R. 97 (Bankr. N.D. Tex. 2005); *In re Mazzoni*, 318 B.R. 576 (Bankr. D. Kan. 2004); *In re Kemmer*, 315 B.R. 706 (Bankr. E.D. Tenn. 2004); *In re Shank*, 315 B.R. 799 (Bankr. N.D. Ga. 2004); *In re Jorczak*, 314 B.R. 474 (Bankr. D. Conn. 2004); *In re Cluff*, 313 B.R. 323 (Bankr. D. Utah 2004)). I find no reason to disagree with the majority on this issue and perceive no reason to distinguish the instant case on its facts.

If Debtors had simply objected to RBS's claim because it failed to attach appropriate documents, the motion to dismiss would be granted with leave to file an amended objection to the proof of claim. But Debtors have raised substantive legal and factual objections to RBS's proof of claim that require further hearing by the Court. For example, Debtors question why the claim includes foreclosure costs when no foreclosure suit had been commenced before the petition was filed. They also challenge RBS's entitlement to incur costs for a "BPO" (broker's price opinion) in addition to an appraisal fee. Debtors also object to the inclusion of post-petition interest charges in the proof of claim. RBS denies that any of these costs are improper. Debtors have raised objections to the proof of claim that place into question the prima facie validity of the claims. The motion to dismiss must be denied because Debtors will be entitled to relief if they prove facts consistent with the allegations set forth in the Complaint. But even if they prevail, the relief requested will not be the relief granted. If I sustain Debtors objection to RBS's claim it would be unduly harsh to strike the claim with a bar to refiling and to avoid RBS's lien. If it is

5

determined that Debtors' objections should be sustained, RBS will be directed to file an amended proof of claim consistent with the findings of the Court.

      c.      *Third Count – Improper and Unauthorized Fees*

The third count charges RBS with "willful, intentional, gross and flagrant violations" of 11 U.S.C. §§ 105 and 506, as well as Fed. R. Bankr. P. 2016. Debtors allege that RBS's actions "violated" § 506 because the "fees charged by [RBS] were not part of the underlying agreement by and between [RBS] and the Debtor, and the fees and cost are otherwise unreasonable and excessive." Debtors further allege that they suffered "anxiety, harassment, intimidation and annoyance" as a result of these "violations," which entitles them to actual and punitive damages, as well as counsel fees. Debtors provide no authority for the proposition that § 506 or Rule 2016 creates a cause of action for damages. To the contrary, a bankruptcy court is not free to create new substantive rights that do not exist in the Bankruptcy Code.

> A violation of a federal statute that results in some form of harm or injury to the plaintiff "does not automatically give rise to a private cause of action in favor of that person." *Cannon v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Instead, a court must find that Congress intended for such a remedy to be available. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).
>
>     The plain language of 11 U.S.C. § 506(b) does not permit a private cause of action. Thus, in order for a party to be able to assert that such a right exists, they have to look to the court's equitable powers under 11 U.S.C. § 105(a). But while Congress intended for 11 U.S.C. § 105(a) to be an instrument with a great deal of power, it does not give a court the power to create substantive rights which would otherwise be unavailable under the Bankruptcy Code. *In re Morristown & Erie R. Co.*, 885 F.2d 98, 100 (3d Cir.1989).

*In re Figard*, 382 B.R. 695, 713 (Bankr. W.D. Pa. 2008). In *Figard*, debtors filed an adversary complaint against the mortgagee alleging "violations" of § 506(b) in the filing of a proof of claim. The bankruptcy court granted the mortgagor's motion for summary judgment and

dismissed counts in the complaint seeking such damages. Identical principals apply in the within case. Debtors having failed to set forth a basis in law for the relief requested, the Third Count also will be dismissed.

   *d.  Fourth Count – Violation of the Federal Rules of Bankruptcy Procedure*

  The Fourth Count will be dismissed because there is no private cause of action for violation of the Federal Rules of Bankruptcy Procedure.

   *e.  Fifth Count – RESPA Violation*

  RESPA was enacted to reform the real estate settlement process and to ensure that consumers were provided with more complete and timely information on costs incurred in connection with the settlement process. 12 U.S.C. §2601(a); *See In re Figard*, 382 B.R. at 710-11. The provision at issue in the within case, § 2605(e), states that when a borrower submits a "qualified written request" (QWR) to a loan servicer requesting "information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . ." 12 U.S.C. § 2605(e)(1)(a). A QWR is defined as written correspondence that enables the servicer to identify the borrower and the borrower's account and " includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). No later than 60 days . . . after receipt of the request, the servicer must:

> **(B)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes –
>  **(i)** to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

7

          **(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
        **(C)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes –
          **(i)** information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
          **(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

If the servicer fails to respond to the QWR, it may be liable for the borrower's actual damages, costs and, "in the case of a pattern or practice of noncompliance with the requirements of this section," additional damages not to exceed $1,000. 12 U.S.C. § 2605(f)(1), (3).

Debtors sent a QWR to RBS's predecessor, CCO Mortgage Corporation, by certified mail on March 20, 2007 requesting " (1) a complete and original life of loan transaction history prepared by the Servicer from its own records using its own system and default servicing personnel; and (2) a plain English definition of any transaction codes used." Debtors allege that RBS failed to acknowledge or respond to Debtors' QWR in violation of 12 U.S.C. § 2605(e) and Reg. X. § 3500.21(e)." (Complaint, ¶ 39). In its answer to the Complaint, RBS denies that it failed to respond. A "delivery signature detail" form used by a commercial delivery service was attached to the answer as proof that Debtors received a response to the QWR. In addition, RBS attached several spreadsheets, which purportedly substantiate the fees and costs incurred by RBS in the foreclosure process, as well as provide a summary of the account activity on Debtors' mortgage. Thereafter, Debtors filed an answer to the motion to dismiss in which they admitted that "a partial response" to the QWR had been received.

Before making a determination as to whether RBS has violated certain provisions of RESPA, the Court must determine whether it has subject matter jurisdiction over Debtors' cause of action. It is well settled that subject matter jurisdiction cannot be established by waiver,

8

consent, estoppel or failure to challenge jurisdiction early in the proceedings. *See, e.g., Ins. Corp. of Ireland, Ltd. v. Compagnie de Bauxites Guinee,* 456 U.S. 694, 701, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); *United Food & Commercial Worker's Union v. Centermark Properties Meriden Square, Inc.,* 30 F.3d 298, 303 (2d Cir.1994). "[S]ubject matter jurisdiction may not be conferred upon this Court by agreement." *In re Digital Impact, Inc.,* 223 B.R. 1, 15 (Bankr. N.D. Okla. 1998) (citing, *Sosna v. Iowa,* 419 U.S. 393, 398, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Feld v. Zale Corp. (In re Zale),* 62 F.3d 746, 754, 757 n. 26 (5th Cir.1995) (bankruptcy court cannot enlarge its jurisdiction for judicial economy or for the purpose of fostering agreements or settlements of controversies; a court exceeds its authority in entering consent orders the subject matter over which it lacks jurisdiction). Thus, while RBS filed an answer in which it admitted Debtors' averment that this matter was "primarily a core proceeding," I must nonetheless consider whether I have subject matter jurisdiction over a complaint seeking damages under RESPA.

The parameters of a bankruptcy court's subject matter jurisdiction are defined at 28 U.S.C. §§157 and 1334. Bankruptcy courts have original and exclusive jurisdiction of cases under title 11. They also have original, but not exclusive jurisdiction of civil proceedings arising under, arising in or related to cases under title 11. 28 U.S.C. §1334. Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings[4] arising under title 11 or arising in

---

[4]Core proceedings include, but are not limited to: matters of administration of the estate; allowance of claims or exemptions; counterclaims by the estate; orders in respect to obtaining credit; orders to turn over property of the estate; proceedings to determine, avoid, or recover preferences; motions to terminate, annul, or modify the automatic stay; proceedings to determine, avoid, or recover fraudulent conveyances; determinations as to the dischargeability of particular debts; objections to discharges; determinations of the validity, extent, or priority of liens; confirmations of plans; orders approving the use or lease of property or cash collateral; orders

9

Case 1:07-ap-00122-MDF    Doc 17    Filed 04/24/08    Entered 04/25/08 09:13:37    Desc
Main Document      Page 9 of 12

a case under title 11. 28 U.S.C. § 157(b). RESPA actions are not cases under title 11. They arise under title 12, not title 11. "Proceedings . . . 'arising under title 11' are those civil actions which are created or determined by the Bankruptcy Code." *Hohl v. Bastian,* 279 B.R. 165, 171 -72 (W.D. Pa. 2002) (citing, *Stamm v. Rapco Foam, Inc.,* 21 B.R. 715, 723 (Bankr. W.D. Pa. 1982); *In re Santa Clara County Child Care Consortium,* 223 B.R. 40, 42 (1st Cir. BAP 1998)). "Proceedings 'arise in' bankruptcy if they have no existence outside of the bankruptcy." *U.S. Trustee v. Gryphon at Stone Mansion, Inc.,* 166 F.3d 552, 556 (3rd Cir. 1999). Clearly, a RESPA case has existence outside of bankruptcy, and so the instant adversary is not encompassed by my "arising in" jurisdiction.

"The test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984) (emphasis omitted). The instant complaint arose after RBS filed a proof of claim in the case. In *Katchen v. Landy*, 382 U.S. 323, 330, 86 S. Ct. 467, 473 (1966), the Supreme Court held that when a creditor files a proof of claim it submits itself to the summary jurisdiction of the bankruptcy court. In *Southeastern Sprinkler Company, Inc. v. Meyertech Corp. (In re Meyertech)*, 831 F.2d 410 (3d Cir. 1987), the Court of Appeals for the Third Circuit held that a creditor's prepetition breach of warranty claim under state law was a core matter. The Court of Appeals determined that the matter was core because it was "an action which [had] as its foundation a question of the

---

approving the sale of property; and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

validity of a claim which accrued under state law against the bankrupt estate prior to bankruptcy." *Id.* at 416-17. Accordingly, I also conclude that the instant proceeding is within the Court's core jurisdiction.

Debtors' Complaint accuses RBS of a "flagrant and willful violation of 12 U.S.C. § 2605(e)" based on its "failure to acknowledge and/or respond to" Debtors' QWR. A fair reading of this averment is that RBS failed to make any response to the QWR. Attached to RBS's answer to the Complaint is the response that RBS provided to Debtors' counsel, along with proof of receipt. Debtors have acknowledged the accuracy of RBS's answer, and they now admit that RBS did acknowledge and respond to the QWR. Nonetheless, Debtors insist that RESPA has been violated because "Defendant continues to stonewall Plaintiff's attempts to obtain proof of the charges asserted therein."[5] Having reviewed the information provided by RBS, the Court is unable to determine what specific information RBS failed to provide that Debtors requested. Further, it is clear that the allegation in the Complaint is false. It does not aver that an *inadequate* response under RESPA was received; it avers that *no* response was received.[6] Given this phrasing, Debtors' Complaint is subject to dismissal because Debtors are not entitled to relief based on any set of facts that they could prove *consistent with the allegation of their complaint*.

---

[5]The pleadings of both parties are tainted with personal invective that may have provided an opportunity for the parties to vent but which accomplished little to inform the Court of their respective positions.

[6] RBS's response to the QWR included four spreadsheet documents, one consisting of five pages entitled "Fee Activity Ledger," the second consisting of ten pages entitled "Transaction History Print," the third consisting of eighteen pages entitled "Loan History Print," and the fourth consisting of two pages entitled "Customer Account Activity Statement." While the response to the QWR does not include "a plain English definition of any transaction codes used," as Debtors requested, it is not so deficient as to constitute no reply.

11

Had Debtors requested leave to file a motion to amend, the Court could have exercised its discretion to permit Debtors to conform the Complaint to the admitted facts. However, in the absence of a motion the court has no basis to grant Debtors leave to amend. *Ramsgate Court Townhome Association v. West Chester Borough*, 313 F.3d 157 (3d Cir. 2002). Accordingly, RBS's motion to dismiss as to Count Five also is granted.

An appropriate order will be entered.

By the Court,

*[signature: Mary D. France]*
Bankruptcy Judge

Date: April 24, 2008

*This document is electronically signed and filed on the same date.*